# IN THE SUPREME COURT OF TENNESSEE AT KNOXVILLE
September 4, 2002 Session

## STATE OF TENNESSEE v. TAKEITA M. LOCKE
**Appeal by permission from the Court of Criminal Appeals,
Criminal Court of Knox County
No. 67739B  Hon. Richard B. Baumgardner**

---

### No. E2000-00923-SC-R11-CD - Filed November 1, 2002

---

The defendant, Takeita M. Locke, was tried and convicted in the Knox County Criminal Court of felony murder and especially aggravated robbery in the death of Chuck Newman. The Court of Criminal Appeals unanimously affirmed both convictions. We granted this appeal to determine if the trial court committed reversible error by failing to instruct the jury on certain lesser-included offenses of felony murder, namely: second degree murder, reckless homicide, and criminally negligent homicide. Additionally, with respect to her conviction for especially aggravated robbery, the defendant maintains that the trial court committed reversible error by failing to instruct the jury on the lesser-included offenses of facilitation of a felony (especially aggravated robbery), aggravated robbery, and robbery. After examining the facts and the law relevant to these issues, we hold that the trial court's failure to instruct the jury on the lesser-included offenses of second degree murder, reckless homicide, and criminally negligent homicide was reversible error. We also hold that the trial court's failure to instruct on the lesser-included offenses of facilitation of especially aggravated robbery, aggravated robbery, and robbery was erroneous, but such errors were harmless beyond a reasonable doubt.

### Tenn. R. App. P. 11 Application for Permission to Appeal;
### Judgment of the Court of Criminal Appeals Affirmed in Part and Reversed in Part and Remanded to the Criminal Court of Knox County.

WILLIAM M. BARKER, J., delivered the proposed opinion of the court, the panel of which consisted of FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ.

Wade V. Davies (on appeal) and Gerald Lee Gulley, Jr. (at trial), Knoxville, Tennessee for the appellant, Takeita M. Locke.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; Randall E. Nichols, District Attorney General; and G. Scott Green, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

# FACTS

In the early morning hours of October 17, 1998, the defendant, Takeita M. Locke, was riding in a car with her boyfriend, Jerry "Bam" Graves, Adam Faw (the driver), and Christina Martin. During the ride, the members of the group decided to rob someone and proceeded to the Montgomery Village Housing Project in Knoxville, Tennessee. Upon arriving in the parking lot, at around 5:00 a.m., Graves spotted Chuck Newman walking toward one of the apartments. Mr. Newman knocked on the door of Karen Verklas' apartment and proceeded inside when she opened the door. Before Ms. Verklas could close the door, Graves barged inside and demanded Mr. Newman's money. When Newman refused, a struggle ensued.

Ms. Verklas had been inside with her boyfriend, Roberts Richards, and both watched as Graves forced Mr. Newman onto the couch and began beating him with a gun around the head. They also both observed, during the struggle, the defendant enter the apartment and attempt to pry Mr. Newman's hand open while he was being pistol-whipped by Graves. After Ms. Verklas and Mr. Richards fled the apartment to summon help, Mr. Newman was fatally stabbed with a kitchen knife by either Graves or the defendant.

Investigator Samuel Brown of the Knoxville Police Department responded to the incident and interviewed both Ms. Verklas and Mr. Richards. Investigator Brown determined that the nicknames used by the suspects were "Sherry or Cherry" and "Bam." Subsequently, Investigator Brown spoke to other personnel at the Knoxville Police Department who informed him that a young woman named Takeita Bell[1] may use the nickname "Cherry." As a result, Investigator Brown had Locke arrested and taken into juvenile custody.[2] On October 18, 1998 and the following day, Investigator Brown interviewed the defendant at the Juvenile Detention Facility after informing her of her rights. She was later charged in Juvenile Court which issued an order on December 9, 1998 transferring her to Knox County Criminal Court for prosecution as an adult. Subsequently, a presentment charged the defendant and Graves[3] with the offenses of felony murder and especially aggravated robbery.

The trial began on October 13, 1999, with the State calling Dr. Sandra Elkins, who is employed as the Knox County Medical Examiner and Director of Autopsy Services at the University of Tennessee Medical Center. Dr. Elkins performed the autopsy on Mr. Newman and testified that the stab wound was approximately 3.55 inches deep and was the cause of death. Dr. Elkins also

---

[1] Takeita Bell and Takeita Locke are the same person. The defendant's legal name is "Locke," but she sometimes uses her mother's last name "Bell." Additionally, consistent with the presentment, the defendant's first name will be spelled "Takeita," rather than "Takieta."

[2] At the time of the offenses, Locke was seventeen years old.

[3] Though the defendant and Graves were charged with the same crimes, they were tried separately. Any claims for relief by Jerry Graves are not currently before the Court.

noted that the curved lacerations on Mr. Newman's skull were consistent with someone who had been struck in the head with an object such as the butt of a pistol.

The State then called several witnesses who linked the defendant to the murder of Mr. Newman. Both Ms. Verklas and Mr. Richards testified that Locke entered the apartment during the struggle and attempted to pry open the victim's hand while he was being beaten with the gun by Graves. Mr. Richards also stated that the defendant asked Graves, "How much does he have on him?" as she was attempting to pry open the victim's hand. Both Ms. Verklas and Mr. Richards also testified that they witnessed Graves and Locke leave the apartment together. Additionally, Adam Faw testified that after providing Graves with a gun, he watched from the car as Locke stood look-out at a garbage dumpster and then ran inside the apartment after the commotion began. The State then called Investigator Brown and Officer Lawrence Libscombe to detail the conflicting statements that had been offered by the defendant concerning the robbery and homicide of Chuck Newman.

For the defense, Melvina Terry testified that she was a resident of Montgomery Village and that she was outside in the parking lot when Mr. Newman was beaten and stabbed. Ms. Terry claimed that she witnessed Mr. Newman walk inside the Verklas apartment followed by two males. Ms. Terry further claimed that she and the defendant were standing outside talking while the attack occurred. Ms. Terry testified that after hearing some yelling and commotion coming from the Verklas apartment, Locke ran over to the apartment and came out five minutes later shaking. After this, Ms. Terry claimed that Graves emerged from the apartment with the gun and forced Locke to get in the car.

The defendant's mother, Mary Ann Bell, also testified on the defendant's behalf. Ms. Bell testified that Graves had routinely beaten Locke during their relationship; had stabbed Locke with a pair of scissors; and had once shot a gun at Ms. Bell herself. On cross-examination, Ms. Bell admitted that Ms. Terry was a personal friend of hers and that Ms. Terry routinely smoked crack cocaine. Lastly, the defendant took the stand in her own defense. She claimed that on the day in question, she sat on some steps with Ms. Terry while Graves and Faw committed the robbery and murder of Chuck Newman. Locke further testified that she did not enter the apartment at any time.

At the conclusion of the proof, the trial court instructed the jury on the offenses of felony murder and facilitation of felony murder. Additionally, the trial court instructed the jury on especially aggravated robbery. Following deliberation, the jury returned guilty verdicts on both felony murder and especially aggravated robbery. On appeal, the Court of Criminal Appeals unanimously affirmed both convictions and concluded that the trial court's failure to charge the lesser-included offenses of second degree murder, reckless homicide, criminally negligent homicide, aggravated robbery, robbery, and facilitation of especially aggravated robbery was not reversible error.

For the reasons stated herein, we reverse the decision of the Court of Criminal Appeals in part and affirm it in part and conclude that it was reversible error not to instruct the jury on the lesser-included offenses of second degree murder, reckless homicide, and criminally negligent

homicide. Additionally, we hold that the trial court's failure to instruct the jury on aggravated robbery, robbery, and facilitation of especially aggravated robbery on the charge of especially aggravated robbery was harmless error in this case. Accordingly, defendant Locke's case is remanded to the Criminal Court of Knox County for a new trial on the felony murder charge. The defendant's especially aggravated robbery conviction is affirmed.

## ANALYSIS

As we recently stated in State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002), when courts apply the lesser-included offense doctrine, "three questions arise: 1) whether an offense is a lesser-included offense; 2) whether the evidence supports a lesser-included offense instruction; and 3) whether an instructional error is harmless." Locke asserts that the trial court erred because it failed to instruct the jury on a variety of lesser-included offenses to the charges of first degree felony murder and especially aggravated robbery. Accordingly, an examination of the three lesser-included offense questions is warranted.

### *LESSER-INCLUDED OFFENSES OF FELONY MURDER*

#### *A. Lesser-Included Offenses*

At trial, the presiding judge only instructed the jury on felony murder and facilitation of felony murder on count one of the presentment. It is a well-settled principal that "a trial court must instruct the jury on all lesser-included offenses if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offense." State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999) (quoting State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999)).

Under the test we announced in Burns,[4] defendant Locke maintains that the trial court erred in failing to charge second degree murder, reckless homicide, and criminally negligent homicide on the charge of felony murder. We agree. Recently, in State v. Ely, 48 S.W.3d 710, 721-22 (Tenn. 2001), we held that "because the mental states required for [second degree murder, reckless homicide, and criminally negligent homicide] differ only in terms of seriousness and punishment, the offenses of second degree murder, reckless homicide, and criminally negligent homicide are lesser-included offenses of felony murder under part (b) of the Burns test." We reiterate that holding today.

---

[4] Under the Burns analysis, an offense is considered a lesser-included if: (a) all of its statutory elements are included within the statutory elements of the offense charged; or (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing (1) a different mental state indicating a lesser kind of culpability; and/or (2) a less serious harm or risk of harm to the same person, property or public interest; or (c) it consists of (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b). Id. at 467.

*B. Evidence Supporting Lesser-Included Offense Instructions*

Having determined that second degree murder, reckless homicide, and criminally negligent homicide are lesser-included offenses, the next inquiry is whether the evidence produced at trial warranted instructions on these offenses. The test for determining whether an instruction on a lesser-included offense should be given in a case was also articulated in Burns:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

6 S.W.3d at 469. In making this determination, reviewing courts must be mindful that simply because the evidence is sufficient to support a conviction for the greater offense does not excuse the failure to instruct on a valid lesser-included offense. See Allen, 69 S.W.3d at 187 (citing State v. Bowles, 52 S.W.3d 69, 75 (Tenn. 2001)). Moreover, "[a] defendant need not demonstrate a basis for acquittal on the greater offense to be entitled to an instruction on the lesser offense." Id.

Our review of the record in this case leads us to the conclusion that there was sufficient evidence from which a reasonable jury could have found Locke guilty of criminally negligent homicide, reckless homicide, or second degree murder. As previously summarized, the record in this case shows that Locke and Graves were inside the Verklas apartment at the time that Chuck Newman was robbed and fatally stabbed. Though the State had several witnesses that placed the defendant inside the apartment, there was no witness who testified as to all the events inside the apartment that morning. Locke, on the other hand, testified that she did not enter the apartment. Her testimony was partially corroborated by a witness, Ms. Terry, who claimed that Locke entered the apartment after all the commotion had taken place and emerged from the apartment "shaking." The fact that no witness claimed to be inside the apartment when Mr. Newman was stabbed enabled the State to argue to the jury that perhaps it was Locke herself who actually stabbed Mr. Newman during the struggle.[5]

Accordingly, if the jury believed that the defendant was present, it may have reasonably concluded that she either stabbed Mr. Newman or assisted Graves as he stabbed Mr. Newman.

_____

[5] In its brief, the State claims that this case is distinguishable from Ely because "the State offered no proof that the defendant herself beat or stabbed the victim." Brief of Appellee at 13. However, in closing argument, the prosecutor argued: "If Bam Graves has a pistol in his hand, which everybody says he did, including [Locke], and is pistol-whipping Chuck Newman, what reason does he have to go get a knife, if he is going to finish him off? Conversely, if there is someone there who is trying to get the money and just isn't having a whole lot of success while that pistol repeatedly strikes him in the head and face, they are going to be the ones in position to walk into the kitchen and come back and do the work." [R. 271]. Very clearly, this demonstrates that the State was willing to let the jury choose between finding Locke guilty under either a principal or a criminal responsibility theory.

Additionally, the jury may have concluded that Locke assisted Graves as he repeatedly struck Mr. Newman in the head with the gun. Either participating in stabbing someone in the chest with a knife or participating in beating someone in the head with a gun is conduct "reasonably certain to cause [death]." Tenn. Code Ann. § 39-13-302(b) (1997). Consequently, if the jury believed that Locke was "aware . . . that [her] conduct [was] reasonably certain to cause [death]," *i.e.* a knowing killing, it could have convicted her of second degree murder.

Likewise, an average person participating in such conduct would be aware of the "substantial and unjustifiable risk that [death] will occur." Tenn. Code Ann. § 39-11-302(c) (1997). If the jury believed that the defendant was aware of, but consciously disregarded such a risk, it could have convicted her of reckless homicide. Similarly, an ordinary person participating in such conduct "ought to be aware of a substantial and unjustifiable risk [death] will occur." Tenn. Code Ann. § 39-11-302(d) (1997). If the jury believed that Locke was not aware but should have been aware of this risk, it could have convicted her of criminally negligent homicide. Thus, a conviction for any of these offenses would have been supported by the evidence offered at trial, and failure to instruct on these offenses was error.

*C. Harmless Error Analysis*

Having determined that it was error for the trial court to fail to instruct on these lesser-included offenses, we must now resolve whether such error was harmless or prejudicial. The Court of Criminal Appeals held that any error in this case "was harmless beyond a reasonable doubt, because it <u>more probably than not</u> did not affect the judgment to the prejudice of the defendant." Opinion at 14 (emphasis added). Both the defendant and the State agree that the Court of Criminal Appeals articulated an incorrect harmless error standard. Nevertheless, the State contends that the Court of Criminal Appeals did correctly <u>apply</u> the proper standard to the facts and evidence in this case. We disagree.

Although there was some confusion concerning the source of the right to receive lesser-included offense instructions following <u>State v. Williams</u>, 977 S.W.2d 101 (Tenn. 1998), we clearly iterated in <u>Ely</u> that this right was constitutional in nature as part of the right to trial by jury and "is violated when the jury is not permitted to consider <u>all</u> offenses supported by the evidence." <u>Ely</u>, 48 S.W.3d at 727 (emphasis in original). That the source of this right is constitutional in nature is meaningful; "the State bears the burden of showing that a deprivation of this right is harmless beyond a reasonable doubt." <u>Id.</u> at 725 (quoting <u>Chapman v. California</u>, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed. 705 (1967)).

We have previously explained that "nonconstitutional errors will <u>not</u> result in reversal unless the error affirmatively appears to have affected the result of the trial on the merits, or considering the whole record, the error involves a substantial right which more probably than not affected the judgment or would result in prejudice to the judicial process." <u>State v. Harris</u>, 989 S.W.2d 307, 315 (Tenn. 1999) (citing Tenn. R. Crim. P. 52(a)) (emphasis in original). By including the words "more probably than not," the Court of Criminal Appeals lessened the constitutional harmless error standard

and co-mingled it with the non-constitutional harmless error standard. Various courts, including the United States Supreme Court, have noted the significant difference between the two standards and that cases may be decided differently based upon which standard is applied. Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L. Ed. 2d 353 (1993).

The diluted standard used by the Court of Criminal Appeals in this case was a reversion to the standard we articulated in State v. Swindle, 30 S.W.3d 289 (Tenn. 2000). In Swindle, we held that under lesser-included offense harmless error analysis, "[r]eversal is required if the error affirmatively affected the result of the trial, or more probably than not affected the judgment to the defendant's prejudice." Id. at 293. Although we noted in Ely that Swindle did not reference the Chapman standard for constitutional harmless error analysis, we did not *expressly* overrule Swindle at that time. Ely, 48 S.W3d at 726. However, the standard used in Swindle does not comport with the constitutional harmless error standard articulated in Ely. Therefore, to the extent that Swindle is inconsistent with Ely and this decision, it is overruled. Furthermore, in spite of the State's argument, we cannot agree that the Court of Criminal Appeals applied the proper harmless error standard in this case. Because the intermediate court articulated an incorrect standard, we must assume that it applied the same incorrect standard in its analysis.

Nevertheless, the State additionally contends that the trial court's failure to instruct on these lesser-included offenses was harmless beyond a reasonable doubt because the jury rejected the lesser-included offense of facilitation of felony murder and convicted Locke of the highest offense instructed on: felony murder. In this argument, the State relies upon the reasoning of Williams. In Williams, we held that a trial court's failure to instruct the jury on voluntary manslaughter was harmless beyond a reasonable doubt because the jury had considered both first and second degree murder and had found the defendant guilty of first degree murder. We held that "the jury's verdict of guilt on the greater offense of first degree murder and its disinclination to consider the lesser-included offense of second degree murder clearly demonstrates that it certainly would not have returned a verdict on voluntary manslaughter." 977 S.W.2d at 106 (citing State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990)).

Applying Williams in this case, the determination of whether the trial court's error was harmless necessarily turns on the relationship between facilitation and the other lesser-included homicide offenses. In determining this relationship, we are mindful that in Williams we stated that "by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, second degree murder, the jury necessarily rejected all other lesser offenses, including voluntary manslaughter." 977 S.W.2d at 106 (emphasis added). Facilitation, however, unlike lesser degrees of homicide is not an immediately lesser offense of felony murder under part (b) of the Burns test. In fact, facilitation is a separate and distinct theory of liability from that of a principal offender or someone who is criminally responsible for the conduct of another. The Tennessee Code defines facilitation as follows:

> A person is criminally responsible for the facilitation of a felony, if,
> knowing that another intends to commit a specific felony, but without
> the intent required for criminal responsibility under [Tennessee Code

Annotated] § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of a felony.

Tenn. Code Ann. § 39-11-403(a) (1997) (emphasis added).

There are several reasons why the jury may have rejected facilitation in this case. A facilitation instruction addresses Locke's role in the crime as a facilitator rather than a party to the offense. First, the jury could have found that the defendant's intent was such as to cause her to be criminally responsible for the death of Chuck Newman. Additionally, based on the evidence, the jury could have concluded that Locke was principally responsible for the death of Mr. Newman to some degree. Regardless, the rejection of facilitation did not necessarily mean that the jury would have rejected all lesser degrees of homicide; it could merely have meant that the jury found the defendant played a role in the crime that was not that of a facilitator. However, upon finding that facilitation was inapplicable, the jury was left with only two options, it could acquit Locke outright or find her guilty of first degree felony murder. We have previously observed that when a jury is forced into an "all or nothing" decision, the dilemma is likely going to be "resolved against the defendant, who is clearly guilty of 'something.'" Burns, 6 S.W.3d at 466.

Mindful of these principals, we are unable to conclude that the trial court's failure to instruct the jury on second degree murder, reckless homicide, and criminally negligent homicide did not affect the trial beyond a reasonable doubt. Williams is not controlling here given the different mental state required for facilitation. In Allen, we held that when a reviewing court is determining whether a lesser-included instruction error was harmless beyond a reasonable doubt, the "reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of the defense, and the verdict returned by the jury. 69 S.W. 3d at 191. Given the conflicting evidence in this case involving Locke's intent and actions on the morning of October 17, 1998, we conclude that the jury could have convicted the defendant of second degree murder, reckless homicide, or criminally negligent homicide. The evidence in this case would have supported any of those verdicts. Because we cannot conclude beyond a reasonable doubt that the failure of the trial court to instruct on these lesser-included offenses did not affect the outcome of the defendant's trial, we hold that the error was not harmless.

## LESSER-INCLUDED OFFENSES OF ESPECIALLY AGGRAVATED ROBBERY

### A. Lesser-Included Offenses

In addition to felony murder, the State charged Locke with especially aggravated robbery. At the conclusion of the proof, the trial court instructed the jury only on the offense of especially aggravated robbery. The defendant contends that the trial court committed reversible error by failing to instruct the jury on the offenses of aggravated robbery, robbery, and facilitation of especially aggravated robbery. The State counters that any error on the part of the trial court was "harmless beyond a reasonable doubt because the proof was uncontroverted and overwhelming that Graves used a deadly weapon to inflict serious bodily injury that led to the victim's death." Brief of Appellee at 15.

Clearly, aggravated robbery and robbery are lesser-included offenses of especially aggravated robbery under part (a) of the Burns test. Part (a) is satisfied because all of the elements of aggravated robbery and robbery are elements of especially aggravated robbery. In other words, aggravated robbery and robbery are lesser-included offenses of especially aggravated robbery because one cannot commit an especially aggravated robbery without satisfying all the elements of the two lesser offenses. Likewise, facilitation of especially aggravated robbery is also a lesser-included offense of especially aggravated robbery under part (c)(1) of the Burns test. Accordingly, we agree with the defendant that aggravated robbery, robbery, and facilitation of especially aggravated robbery are all lesser-included offenses of especially aggravated robbery.

## B. Evidence Supporting Lesser-Included Offense Instructions

Having determined that aggravated robbery, robbery, and facilitation of especially aggravated robbery are all lesser-included offenses, we must now decide whether instructions on these offenses were warranted under the evidence produced at trial. The evidence in this case has already been summarized. The jury found the evidence sufficient to convict the defendant of especially aggravated robbery. As we noted in Allen:

> Evidence sufficient to warrant an instruction on the greater offense also will support an instruction on a lesser offense under part (a) of the Burns test. In proving the greater offense the State necessarily has proven the lesser offense because all of the statutory elements of the lesser offense are included in the greater.

69 S.W.3d at 188 (citing Bowles, 52 S.W.3d at 80). Because reasonable minds may accept identical evidence as supporting the existence of both the lesser and greater offense, we conclude that in the instant case, evidence existed such that the jury could reasonably have found aggravated robbery and robbery. Moreover, the evidence was legally sufficient to support convictions on either of these offenses. Accordingly, we hold that the trial court erred in failing to instruct the jury on aggravated robbery and robbery.

Additionally, based upon the proof at trial, evidence was produced such that facilitation of especially aggravated robbery could have been instructed to the jury on the charge of especially aggravated robbery. As we have previously noted, facilitation is established by proof that "knowing that another person intends to commit a specific felony, but without the intent required for criminal responsibility under [Tennessee Code Annotated] § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403 (1997).

To reiterate, the evidence in this case was highly contested. Witnesses for the State testified that Locke was present during the robbery, but the proof regarding the extent of her participation was not clear. The defendant countered by claiming she never participated in the event, and her testimony was partially corroborated by at least one eyewitness. Therefore, the jury would have had a factual basis, predicated on the evidence, to determine that Locke's role in the crime was that of a facilitator, rather than a criminally responsible party. Furthermore, the judge instructed the jury on facilitation of felony murder. Clearly, if the evidence supported instructing the jury on facilitation

of the felony murder, then the evidence would support instructing the jury on facilitation of the underlying felony.

Accordingly, we find that there was evidence that reasonable minds could accept on the offense of facilitation of especially aggravated robbery. Moreover, the evidence was legally sufficient to support such a conviction. We are left with no choice but to conclude that the trial court erred by failing to instruct the jury on facilitation of especially aggravated robbery.

*C. Harmless Error Analysis*

Having decided that the trial court committed error in failing to instruct the jury on aggravated robbery, robbery, and facilitation of especially aggravated robbery, we must now determine whether that error is harmless beyond a reasonable doubt. Ely, 48 S.W.3d at 727. Clearly, there is more than one way for an instructional error to be harmless. We have already discussed today the Williams situation where a jury rejects an intermediate lesser-included offense as a basis for harmless error. However, we have also noted that harmless error is not limited to Williams-type cases, and the proper inquiry is "whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial." State v. Allen, 69 S.W.3d 181, 191 (Tenn. 2002).

The State argues that while it was error for the trial court to fail to instruct the jury on aggravated robbery and robbery, any such error was harmless beyond a reasonable doubt because the evidence was "uncontroverted and overwhelming that Graves used a deadly weapon to inflict serious bodily injury that led to the victim's death." Brief of Appellee at 15. While we are aware that the jury could conceivably have convicted Locke of aggravated robbery or robbery had it been instructed on those offenses, we conclude beyond a reasonable doubt that because the evidence was totally uncontroverted and overwhelming that a deadly weapon was used in the robbery and the victim suffered serious bodily injury resulting in his death, no reasonable jury would have convicted on the lesser offenses instead of the charged offense of especially aggravated robbery. Therefore, the trial court's failure to instruct aggravated robbery and robbery did not affect the outcome of the trial beyond a reasonable doubt. Accordingly, the trial court's failure to instruct these lesser-included offenses was harmless.

Additionally, the defendant maintains that the trial court's failure to instruct the jury on facilitation of especially aggravated robbery was reversible error under the authority of Allen, 69 S.W.3d at 191-92,[6] and State v. Flemming, 19 S.W.3d 195, 200 (Tenn. 2000).[7] While it is true that

---

[6] In Allen, we held that the failure to charge facilitation of robbery was reversible error on the facts of that case because we could not conclude beyond a reasonable doubt that the trial court's failure to instruct the offense did not affect the outcome of the trial. 69 S.W.3d at 191-92.

[7] In Flemming, the defendant was convicted of especially aggravated robbery by a jury that was not instructed on either facilitation of especially aggravated robbery or facilitation of aggravated robbery. 19 S.W.3d at 200. However, in Flemming, the jury never had the opportunity to examine the defendant's role as a facilitator. This was despite the fact

(continued...)

-10-

both Allen and Flemming stand for the proposition that failure to instruct on facilitation of an offense is reversible error where the evidence supports the instruction, the erroneous failure to instruct on facilitation is not always reversible. This case is similar to Allen in that there was evidence that supported the defendant as being merely a facilitator. The key distinction between Allen, Flemming, and the instant case is that in determining that Locke was criminally responsible for Mr. Newman's death and rejecting facilitation of felony murder, the jury necessarily rejected the theory that the defendant was merely a facilitator in this crime.

As we held in Allen, in determining whether a lesser-included instruction error is harmless beyond a reasonable doubt, a "reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of the defense, and the verdict returned by the jury." 69 S.W. 3d at 191 (emphasis added). The fact that the defendant's felony murder conviction is being overturned by this Court does not change the fact that the jury considered and rejected Locke's role in the crime as being that of a facilitator. It would be anomalous and contrary to common sense for this Court to conclude that a jury would have found the defendant criminally responsible for the felony murder, but only guilty as a facilitator in the underlying felony. Accordingly, we hold that any error on the part of the trial court to instruct the jury on facilitation of especially aggravated robbery was harmless because it did not affect the trial beyond a reasonable doubt.

**CONCLUSION**

We conclude that the trial court erred by failing to instruct the jury on lesser-included offenses of second degree murder, reckless homicide, and criminally negligent homicide on the felony murder charge and that the error was not harmless beyond a reasonable doubt. Furthermore, we conclude that although the trial court erred in failing to charge aggravated robbery, robbery, and facilitation of especially aggravated robbery on the charge of especially aggravated robbery, such error was harmless because of the uncontroverted evidence of the victim's death and the use of a deadly weapon and because the jury rejected the notion that the defendant was a facilitator in this case by rejecting facilitation of felony murder. Accordingly, Locke's conviction for felony murder is reversed, and the judgment of the Court of Criminal Appeals is reversed in part and affirmed in part. We now remand this case to the Criminal Court of Knox County so that the defendant may receive a new trial on the charge of felony murder. The defendant's especially aggravated robbery conviction is affirmed. Costs of this appeal are taxed to the State of Tennessee.

_____
WILLIAM M. BARKER, JUSTICE

---

[7] (...continued)

that the evidence in that case supported an instruction on facilitation offenses. Id. Because we could not find the trial court's error was harmless beyond a reasonable doubt, we affirmed the Court of Criminal Appeal's decision to reverse Flemming's conviction. Id.