IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2015

# CHRISTOPHER M. MIMMS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 40901172     Michael R. Jones, Judge**

---

**No. M2014-01616-CCA-R3-PC – Filed June 29, 2015**

---

The petitioner, Christopher M. Mimms, appeals the denial of his petition for post-conviction relief from his Montgomery County Circuit Court jury convictions of the sale of .5 grams or more of cocaine and the sale of .5 grams or more of cocaine within a drug-free school zone, claiming that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

James Kevin Cartwright, Clarksville, Tennessee, for the appellant, Christopher M. Mimms.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; John W. Carney, District Attorney General; and Helen Young, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Montgomery County Circuit Court jury convicted the petitioner, who had originally been charged with eight drug-related offenses, of two counts of the sale of .5 grams or more of cocaine, one of which occurred within a drug-free school zone. The State dismissed one of the counts prior to trial, and the jury failed to return verdicts on the remaining counts. *See State v. Christopher M. Mimms*, No. M2011-02712-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Nashville, Feb. 8, 2013), *perm. app. denied* (Tenn. June 12, 2013). The evidence adduced at the petitioner's trial, with respect to the conviction offenses (counts one and five of the indictment), established that the petitioner engaged in two controlled cocaine transactions with a confidential informant and that one of those

transactions occurred in the parking lot of a convenience store that was less than 1,000 feet from Norman Smith Elementary School. *See id.*, slip op. at 3, 5, 6. On direct appeal, the petitioner challenged the sufficiency of the evidence supporting the jury's finding that the second offense occurred in a drug-free school zone, the instructions provided to the jury, and the introduction of certain testimony. *See id.*, slip op. at 1. We deemed the evidence sufficient to support both of the petitioner's convictions and concluded that the petitioner had waived his challenges to the jury instructions "by failing to include a complete copy of the transcript of the jury instructions and verdict forms, and by failing to make a contemporaneous objection at trial." *Id.*, slip op. at 10. We also concluded that the petitioner had waived his evidentiary challenge by failing to lodge a contemporaneous objection. *See id.*, slip op. at 11-12.

On September 20, 2013, the petitioner filed a petition for post-conviction relief, alleging that he had been deprived of the effective assistance of counsel at trial and on appeal.

At the July 17, 2014 evidentiary hearing, the petitioner testified that on the Friday before his trial began, his trial counsel contacted him to advise him that a plea offer had been made by the State. He said that he went to trial counsel's office to sign the agreement, which provided for a 10-year sentence to be served on probation, but that, at some point, "the deal went off." He explained, "I don't know what happened, but . . . [counsel] told me the deal was offered, and I told her I wanted that deal, and before I know it she told me they are going to set a trial date Monday." The petitioner claimed that counsel told him that the plea offer had been rescinded because "the informer was going to testify Monday." He said that he was unaware of any other offers from the State. The petitioner acknowledged his signature on a form indicating that he had rejected the State's 10-year offer, but he maintained that he did not intend to reject the offer and that he signed the form without reading it.

When asked by the State during cross-examination whether he recalled being in court when the prosecutor stated in front of him "that the State had offered eight years probated, that [the petitioner] had turned it down," the petitioner replied, "I don't get no recall on that." The petitioner also could not recall that the State announced that the reason for the lenient plea offer was that the confidential informant was absent from the state. The petitioner also did not recall the prosecutor's statement that the offer would be withdrawn. When asked what he thought counsel should have done differently, the petitioner responded, "She could have held it back against me." The petitioner denied that he had rebuffed the State's offer and had "fussed at [trial counsel] for calling, because [he was] trying to have breakfast with [his] lady." Instead, the petitioner insisted that he wanted to accept the plea offer.

Trial counsel testified that she was appointed to represent the petitioner in October 2010 and that the two met "[u]pwards of 20" times before his March 2011 trial. She recalled that the State offered a sentence of eight years with one year to serve in exchange for the petitioner's plea of guilty and that she recommended that the petitioner accept the agreement. She said that the petitioner rejected that offer, and the State next made an offer that involved a fully-suspended sentence of 10 years. The petitioner rejected that offer as well, which caused her great concern. She said that she had the petitioner sign documents memorializing his rejection of the offers and that she had her legal secretary witness the petitioner's signature on each occasion. She said that she had the petitioner sign the documents because she "anticipated having a post[-]conviction proceeding if we went to trial." She said that the petitioner was not cooperative with her during the time that she represented him.

At the conclusion of the hearing, the post-conviction court took the case under advisement. The court denied relief via written order, concluding that the petitioner had failed to establish his claims by clear and convincing evidence. The court specifically accredited trial counsel's testimony that she informed the petitioner of the terms of the plea offer from the State and, relying on its own memory of the trial proceedings, noted that trial counsel "very carefully advised the [petitioner] of the possible consequences of a trial jury versus the offers from the [S]tate" and that "[t]he [p]etitioner 'rolled the dice' that the confidential informant either would not appear or would be helpful to him." The court concluded that its instructions to the jury regarding the lesser included offense of casual exchange were proper and that the failure to include that charge on the verdict form for one count was harmless because "the jury found the defendant guilty beyond a reasonable doubt of sale of cocaine." Additionally, the court observed that the absence of a casual exchange option in the verdict form would have been beyond counsel's control because it was the "court's custom not to provide counsel at trial with a copy of the verdict form. The first time either would know about the verdict form would be when it is read to the jury."

In this timely appeal, the petitioner reiterates his claims that counsel performed deficiently by failing to preserve for appeal his claim that the trial court erred with regard to the jury instructions on casual exchange as a lesser included offense of the sale of cocaine and by failing to ensure that the direct appeal record was adequate for review of that claim. He claims that the trial court's failure to adequately convey to the jury that casual exchange was a lesser included offense for each count charging the sale of cocaine, coupled with the inconsistent wording of the written jury instructions, made it unclear that casual exchange was actually a lesser included offense of each count charging the sale of cocaine. He argues that the trial court's error was compounded on count five of the indictment because the verdict form for that count did not include casual exchange among the conviction choices available to the jury. The State argues that the

petitioner is not entitled to relief because he failed to establish that it was reasonably probable that the result of the direct appeal would have been different had counsel appropriately preserved the jury instruction issue for review.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and

fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the trial court's factual findings, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The petitioner did not present any live testimony and did not ask trial counsel about the issue during her testimony. Instead, the petitioner elected to rely upon the trial record, a copy of the written jury instructions, and the argument of post-conviction counsel.

On direct appeal, the petitioner alleged "that the trial court erred by failing to instruct the jury on lesser included offenses with respect to both counts," claiming "that simple possession is a lesser included offense of the sale and delivery of crack cocaine, and that the evidence supported an instruction on this score because he testified at trial that he and the confidential informant were close friends who had a history of sharing drugs." *Christopher M. Mimms*, slip op. at 10. The petitioner alleged that the trial court provided the instruction on simple possession only on the first of six counts of the sale or delivery of cocaine and verbally reminded the jury that simple possession was a lesser included offense of all six counts but did not include that instruction in the written instructions provided to the jury. On direct appeal, this court concluded that the petitioner waived plenary review of his "issue by failing to include a complete copy of the transcript of the jury instructions and verdict forms, and by failing to make a contemporaneous objection at trial." *Id.* We declined to examine the issue for plain error because the appellate record did "not clearly establish what happened in the trial court." *Id.*

Again, we are somewhat hampered in our review of the petitioner's claim because of the state of the record. Despite knowing that the record did not adequately convey what had happened in the trial court, the petitioner submitted only that portion of the transcript of the jury instructions that details the trial court's explanation of the verdict form and the court's handling of a question from the jury during its deliberations. The petitioner also supplemented the record with the type-written instructions provided by the trial court, which, pursuant to Rule 30 of the Tennessee Rules of Criminal Procedure,[1] were taken into the jury room during deliberations. Examining these items together, we get a view of what occurred in the trial court.

---

[1] That rule provides:

> In the trial of all felonies--except where pleas of guilty have been entered--every word of the judge's instructions shall be reduced to

-5-

A bit of background is necessary to place the petitioner's claim in the proper context. The petitioner was charged via an eight-count indictment with:

> two counts of selling more than 0.5 grams of cocaine in violation of Tennessee Code Annotated section 39-17-417 [counts one and three], two counts of delivering more than 0.5 grams of cocaine in violation of Tennessee Code Annotated section 39-17-417 [counts two and four], one count of selling more than 0.5 grams of cocaine within a school zone in violation of Tennessee Code Annotated section 39-17-417 (as enhanced by Tennessee Code Annotated 39-17-432) [count five], one count of delivering more than 0.5 grams of cocaine within a school zone in violation of Tennessee Code Annotated section 39-17-417 (as enhanced by Tennessee Code Annotated 39-17-432) [count six], one count of possession of more than 0.5 grams of cocaine in violation of Tennessee Code Annotated section 39-17-417 [count seven], and one count of possession of drug paraphernalia in violation of Tennessee Code Annotated section 39-17-425 [count eight].

*Christopher M. Mimms*, slip op. at 2. Prior to trial, the State dismissed count eight, and the case proceeded to trial on the remaining counts. The jury returned verdicts of guilty only on count one, which charged the sale of .5 grams or more of cocaine, and count five, which charged the sale of .5 grams or more of cocaine within a drug-free school zone. With regard to count one, Michael Vincent, who had been working as a confidential informant, testified that he used $150 that he obtained from the Clarksville Police Department to purchase crack cocaine from the defendant on April 1, 2009. *Id.* Mr. Vincent was fitted with audio recording equipment, and the audio recording of the drug transaction was entered into evidence and played for the jury. With regard to count five, Mr. Vincent testified that he used $150 obtained from the Clarksville Police Department to purchase crack cocaine from the defendant and that the transaction occurred in the

---

> writing before being given to the jury. The written charge shall be read to the jury and taken to the jury room by the jury when it retires to deliberate. The jury shall have possession of the written charge during its deliberations. After the jury's deliberations have concluded, the written charge shall be returned to the judge and filed with the record, but it need not be copied in the minutes.

Tenn. R. Crim. P. 30(b).

parking lot of a convenience store. *Id.*, slip op. at 3. That transaction was also audio recorded, and the recording was admitted into evidence and played for the jury.

Although the transcript of the bulk of the jury instructions was not included in the record in this appeal, the written instructions were included. Those instructions provide the following statements with regard to the lesser included offense of casual exchange:

> The defendant, Christopher Mimms, is charged in Counts One and Three of the indictment with the crime of sale of cocaine.

> . . . Counts One, Two, Three and Four necessarily include the lesser offense of casual exchange.

> The defendant is charged in Count Five of the indictment with the crime of Sale of Cocaine In a School Zone. Count Five necessarily includes the lesser offense of Sale of Cocaine not in a School Zone and Casual Exchange.

> . . . .

> The charges of sale or delivery of a controlled substance are alternative charges as only one event is alleged to have occurred.

> . . . .

> **LESSER INCLUDED OFFENSES IN COUNTS 1, 2, 3 & 4**
> **CASUAL EXCHANGE**

> Any person who commits the offense of casual exchange is guilty of a crime.

> **COUNT 5:   LESSER INCLUDED OFFENSES;**
> . . . .

> **CASUAL EXCHANGE**

> . . . .

**"Sale"** or **"sale"** means a bargained-for offer and acceptance and an actual or constructive transfer or delivery of the substance.

. . . .

It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of controlled substances that the controlled substances so exchanged were exchanged not with the purpose of selling or otherwise dispensing them. You are instructed that "exchange" means to part with, give, or transfer a substance in consideration of something received as an equivalent. "Casual" means without design. The term "casual exchange" does not exclude a transaction in which money is involved.

. . . .

In deciding the guilt of the defendant, you shall first consider the offense charged in the indictment. If you find the defendant guilty of that offense beyond a reasonable doubt, you shall return a verdict of guilty for that offense. If you unanimously find the defendant not guilty of that offense, or have a reasonable doubt of the defendant's guilt of that offense, you shall then proceed to consider whether or not the defendant is guilty of the next lesser included offense in order from greatest to least within that count. You shall not proceed to consider any lesser-included offense until you have first made a unanimous determination that the defendant is not guilty of the immediately-preceding greater offense or you unanimously have a reasonable doubt of the defendant's guilt of that offense. . . .

If you find the defendant guilty of sale of cocaine, then you will not consider the alternative charge of delivery.

. . . .

You will be provided with a form for all possible verdicts in this case. Your foreperson will complete and sign the appropriate verdict.

The verdict forms that were executed by the jury were also included as a supplement to the appellate record. The verdict form for count one provides that the jury should "[s]elect only one" from a list that includes two choices: guilty of the sale of cocaine and not guilty of the sale of cocaine. The verdict form also instructs the jury that, should they "find the defendant guilty beyond a reasonable doubt in count 1," they should "then go to count three." The verdict form for count one does not include casual exchange among the choices available to the jury. Similarly, the verdict form for count five provides that the jury should "[s]elect only one" from a list of three choices: guilty of the sale of cocaine in a school zone, guilty of the sale of cocaine not in a school zone, and not guilty of the sale of cocaine. The count five verdict form also instructs the jury to "go to count 7" if they "find the defendant guilty beyond a reasonable doubt in count 5." The verdict form for count five does not include casual exchange as a lesser included offense.

Following the reading of the general charge, the trial court provided the jury an explanation of the verdict forms. The transcript of that explanation includes the trial court's attempt to differentiate the alternative counts of the sale and delivery of cocaine related to each controlled buy. In this regard, the trial court instructed the jury that it should not consider or render a verdict on those counts charging delivery of cocaine if it concluded beyond a reasonable doubt that the defendant was guilty of the alternative charge of the sale of cocaine. The court also instructed the jury: "If you will remember, I charged you earlier that delivery and sale are alternative charges; therefore, I have only put the casual exchange under the delivery part, but it would apply in counts one and two, together." With regard to counts three and four, upon which the jury did not reach a verdict, the court stated: "Those are alternative charges and you will consider the casual exchange under count four." With regard to counts five and six, the court instructed: "Again, you will consider the casual exchange under Count Six of the alternative charges of five and six." After the jury was excused to deliberate, the court asked the parties if they had "any correction – additions or deletions to the instructions as read." Neither party objected.

After it had deliberated for some time, the jury sent the following statement to the trial court: "'The jury needs a better explanation of casual exchange.'" The trial court provided the following response: "'The Court's response is as follows: The Court is unable to provide any explanation that is not contained in the original instructions.'"

Although the written jury instructions clearly provided that casual exchange was a lesser included offense of counts one through four and although that offense was

-9-

listed explicitly as a lesser included offense of count five, the verdict forms and the trial court's explanation of those verdict forms indicated that casual exchange was a lesser included offense of only those counts charging the delivery of cocaine. The confusion attendant to the verdict forms and the trial court's explanation of the forms is evidenced by the jury's request for a "better explanation of casual exchange." In our view, the verdict forms and the trial court's erroneous explanation of how the jury should consider the offenses had the effect of removing casual exchange from the jury's consideration on counts one and five. Thus the case, posturally, equates to one where the trial court failed to provide an instruction on a lesser included offense.

Although the post-conviction court noted that trial counsel would not have been able to object to the verdict forms because she was not privy to them, the record indicates that she was privy to the erroneous explanation of the offenses that accompanied the verdict forms and that she failed to object when invited to do so. Additionally, counsel raised the issue in the motion for new trial but failed to adequately preserve the issue for appellate review. These failures amounted to deficient performance. Thus, our next task is to determine whether counsel's deficient performance prejudiced the petitioner. To make this determination, we must consider whether the result of the petitioner's direct appeal would have been different had the issue of the trial court's erroneous handling of the lesser included offense instructions been properly preserved. To make this determination, we analyze the case as we would one wherein the trial court had failed to provide an instruction on a lesser included offense.

"'Whether a particular instruction regarding a lesser-included offense should have been given is a mixed question of law and fact,' which we review de novo with no presumption of correctness." *State v. Fayne*, 451 S.W.3d 362, 368 (Tenn. 2014) (quoting *State v. Banks*, 271 S.W.3d 90, 124 (Tenn. 2008)).

We begin by observing that casual exchange is a lesser included offense of the sale of cocaine because all of the elements of the lesser offense are included in the greater offense. *See, e.g.*, *State v. Edward P. Harris*, No. 01C01-9810-CR-00392, slip op. at 4 (Tenn. Crim. App., Nashville, Jan. 13, 2000) ("[I]t is at least arguable that the statutory elements of casual exchange are included within the statutory elements of sale of cocaine.").[2] Additionally, we conclude that the evidence supported the giving of an instruction on casual exchange because the defendant testified at trial that he and the

---

[2] Code section 40-18-110, which provides a statutory definition of the term lesser included offense, is not applicable here because the offenses in this case occurred before the effective date of the 2009 amendment that added the definition. *See* T.C.A. § 40-18-110(f)(1) ("An offense is a lesser included offense if . . . [a]ll of its statutory elements are included within the statutory elements of the offense charged.")

-10-

confidential informant "shared a number of mutual friends," "that they used to go over to each other's houses frequently," that "they drank together and smoked crack cocaine together," and "that he provided crack cocaine to the" confidential informant "on occasion" and the informant "provided crack cocaine to him on occasion, because they were 'smoking partners.'" *See State v. Brown*, 311 S.W.3d 422, 431 (Tenn. 2010) (stating that reviewing court must "determine 1) 'whether any evidence exists that reasonable minds could accept as to the lesser-included offense' and 2) whether 'the evidence ... is legally sufficient to support a conviction for the lesser-included offense.'" (citation omitted)). Consequently, the trial court's failure to clearly instruct the jury that casual exchange was a lesser included offense of the sale of cocaine as charged in counts one and five was error.

"When a lesser-included offense instruction is improperly omitted, . . . the harmless error inquiry is the same as for other constitutional errors: whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial." *State v. Allen*, 69 S.W.3d 181, 191 (Tenn. 2002). "In making this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *Id.* "When an appellate court undertakes a harmless error analysis its purpose is to ascertain the actual basis for the jury's verdict . . . , and [t]he crucial consideration is what impact the error may reasonably be taken to have had on the jury's decision-making." *State v. Rodriguez*, 254 S.W.3d 361, 372 (Tenn. 2008). "'Whether sufficient evidence supports a conviction of the charged offense does not affect the trial court's duty to instruct on the lesser offense if evidence also supports a finding of guilt on the lesser offense.'" *Brown*, 311 S.W.3d at 434 (Tenn. 2010) (quoting *State v. Burns*, 6 S.W.3d 453, 472 (Tenn. 1999)). Ultimately, we must "decide 'whether a reasonable jury *would* have convicted the defendant of the lesser-included offense instead of the charged offense.'" *Banks*, 271 S.W.3d at 126 (quoting *State v. Richmond*, 90 S.W.3d 648, 662 (Tenn. 2002)) (emphasis in *Richmond*). "If no reasonable jury would have convicted the defendant of the uncharged lesser-included offense rather than the offense for which the defendant was convicted, then the failure to charge is harmless beyond a reasonable doubt." *Banks*, 271 S.W.3d at 126 (citing *State v. Locke*, 90 S.W.3d 663, 675 (Tenn. 2002)).

Here, the evidence adduced at the petitioner's trial relative to count one established that the confidential informant participated in a recorded telephone call with the petitioner during which the informant arranged to purchase $150 worth of crack cocaine from the petitioner, and the men "agreed to meet at a Minit Mart on Crossland Avenue in Clarksville, Tennessee." *Christopher Mimms*, slip op. at 2. Prior to the transaction, the informant "was outfitted with a recording device, and his vehicle was searched by police to ensure that it contained no existing contraband." *Id.* The petitioner

changed the location of the transaction at the last minute "to a Chinese buffet." The informant went to the appointed location, and "the [petitioner] came out of the restaurant after several minutes," and the transaction took place inside the informant's car. *Id.* The informant testified that "he 'handed [the petitioner] the money and he handed me the product.'" *Id.* Following the transaction, the informant returned to the police station, where he gave the cocaine to the police and submitted to a second search of his vehicle and his person. The proof relative to count five established "that on April 9, 2009, [the informant] called the [petitioner] again at the behest [the police] and requested to purchase another $150 worth of crack cocaine," "that, once again, [the informant] was searched and outfitted with a recording device," and "that on this occasion, he actually met with the [petitioner] at 'the store,' where he got into the [petitioner's] vehicle and they completed the exchange." *Id.*, slip op. at 3. The informant used marked cash to make each of the controlled purchases of cocaine. The informant identified the voices on the audio recordings of the telephone calls and the drug transactions as belonging to him and the petitioner. The State also introduced "numerous photographs that were taken by police surveillance units during the drug transactions." *Id.* Following the petitioner's arrest, officers searched his car and found "a baggie containing a white crystalline rock-like substance that field-tested positive for cocaine." A search of the petitioner's wallet uncovered "a ten dollar bill matching the serial number of a ten dollar bill that they had photocopied before the drug transaction" that formed the basis of count five. Tennessee Bureau of Investigation testing established that the substance exchanged on April 1, 2009, was .6 grams of cocaine base, that the substance exchanged on April 9, 2009, was .5 grams of cocaine base, and that the substance found in the petitioner's car following his arrest was 4.8 grams of cocaine base. *Id.*, slip op. at 5-6.

We conclude, based upon this evidence, that no reasonable jury would have convicted the petitioner of casual exchange in counts one and five. Although an exchange of money does not preclude a conviction of casual exchange, the exchange of such a substantial amount of money in exchange for a substantial amount of crack cocaine arranged in advance overwhelmingly supports the conclusion that the petitioner sold the cocaine to the informant. Because no reasonable jury presented with this evidence would have convicted the petitioner of casual exchange, the trial court's erroneous handling of the instructions charging casual exchange as a lesser included offense of the sale of cocaine was harmless beyond a reasonable doubt.

Because we have determined that the jury instruction error in this case was harmless beyond a reasonable doubt, we conclude that counsel's deficient performance in failing to object to the jury instructions and failing to preserve properly the issue for appellate review did not prejudice the petitioner and, in consequence, does not support a finding of ineffective assistance of counsel.

Accordingly, we affirm the judgment of the post-conviction court denying post-conviction relief.

_____
JAMES CURWOOD WITT, JR., JUDGE