# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### October 2, 2007 Session

## STATE OF TENNESSEE v. MARIO GREEN

### Direct Appeal from the Criminal Court for Shelby County
### No. 04-03180    Chris Craft, Judge

---

### No. W2006-01383-CCA-R3-CD  - Filed June 5, 2008

---

A Shelby County Criminal Court jury convicted the appellant, Mario Green, of two counts of second degree murder, and the trial court merged the convictions and sentenced him to twenty years in confinement to be served at one hundred percent. On appeal, the appellant contends that the trial court erred by (1) instructing the jury to consider the appellant's guilt on the lesser included offenses of first degree murder in improper sequential order and (2) instructing the jury on criminal responsibility. Finding no errors, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

William D. Massey, Lorna S. McClusky, and Claiborne Ferguson, Memphis, Tennessee, for the appellant, Mario Green.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and James Wax and Michelle Parks, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The record reflects that the appellant and Dimecos Jones were jointly indicted for first degree premeditated murder, first degree felony murder, and especially aggravated robbery against the victim, Kaman Perkins, and that they were tried separately.[1] The appellant does not contest the sufficiency of the evidence. Taken in the light most favorable to the State, the evidence at the

---

[1]At the time of the appellant's trial, Jones had been tried for the offenses and convicted of first degree premeditated murder. See State v. Dimecos Jones, No. W2006-00237-CCA-R3-CD, 2007 Tenn. Crim. App. LEXIS 527 (Jackson, July 3, 2007).

appellant's trial revealed that the victim regularly sold drugs in The Corners apartment complex in Memphis. Christen Williams also sold drugs in the apartment complex, and the two often clashed over their drug territory. On December 13, 2003, Williams "got into it" with the victim and telephoned her friend, the appellant, for help. The appellant told Williams he would speak with the victim. That night, Williams drove the appellant and Jones to the apartment complex in order for the appellant to talk with the victim. The appellant and Jones saw the victim and got out of Williams' car. Williams said that the appellant put a .9 millimeter gun "on his hip" and that Jones put a .357 "on his hip." Williams drove to the back of the apartments and heard a gunshot. The appellant and Jones returned to Williams' car, and the three of them returned to the appellant's home. There, Jones told Williams that he took money and drugs out of the victim's pocket. At the appellant's trial, Williams testified that the appellant told her before the shooting that he was going to fight the victim, but she acknowledged telling the police that the appellant told her he was going to kill the victim. She also acknowledged that she had been charged with facilitation of first degree murder in connection with the victim's death and that her case was still pending. She said she had not been promised anything in exchange for her testimony against the appellant.

Kevin Starks testified that in December 2003, he lived in The Corners apartment complex and saw the victim there every day. In the early morning hours of December 14, 2003, Starks returned home and saw the victim talking with the appellant and another man in the parking lot. Starks heard the appellant say, "No, fuck that shit, tonight he's got to die, tonight" and saw the appellant pull out a pistol. The second man also appeared to have a gun, and Starks heard him say, "Fuck all this talking, let's get this shit over with." Starks walked toward his apartment, began telephoning 911, and heard a gunshot. He went inside his apartment, looked out a window, and saw the victim lying on the ground. He also saw a shadow over the victim "like maybe someone might be going in his pocket." Starks said he never saw the appellant point a gun at the victim.

Kevin Cochran, the victim's friend, testified that he called the victim's cellular telephone about midnight on December 14, 2003. Someone other than the victim answered the phone and told Cochran that the victim was busy. Cochran stated that the person put the telephone down and that he heard noise and arguing in the background. Cochran heard someone say, "Give me the stuff, give me the stuff, get out of the car, lay down on the ground" and heard someone tell the victim, "Lay down, face down on the ground." Cochran left his job and drove to The Corners apartment complex because he knew the victim would be there. When he arrived, he saw the victim lying on the ground and an ambulance.

Marcus Tubbs testified that he was with the victim on the night of December 13, 2003, and rode with the victim to the apartment complex. The appellant and Jones flagged down the victim, and the victim drove over to them. The victim began talking with the appellant, and Jones pulled out a gun and told the appellant to get out of the way. The victim got out of his car, and Jones told the victim to lie on the ground and checked the victim's pockets and shoes for money. The appellant pulled out a gun and told Tubbs to get out of the car. At some point, the victim's cellular telephone rang, and Tubbs answered the phone. Tubbs did not hang up the phone, and the appellant snatched the phone from him. Tubbs heard Jones say, "Should I do him, should I do him[?]" but did not hear the appellant's response. He then saw Jones walk up to the victim and shoot the victim in the back of the head. After the shooting, the appellant and Jones ran from the scene.

At the crime scene, the police found the victim lying on the ground, a blood puddle, two black tennis shoes, and bullet fragments. Later that day, officers went to the appellant's home and knocked on the door, but no one answered. Believing someone was in the house, the officers left the home but watched it from a distance. A car arrived, and Jones came out of the house and got into the car. Officers stopped the car; arrested Jones; and found a .357 Magnum revolver, a .9 millimeter pistol, and ammunition on the front seat. Ballistics testing on the guns was compared with the bullet fragments recovered from the crime scene and revealed that some of the bullet fragments were fired from the revolver. None of the fragments were fired from the pistol. An autopsy revealed that the victim died from a gunshot wound to the top of his head. The victim also had a laceration on his head caused by blunt force trauma, and a forensic anthropologist concluded that he received the laceration before the shooting. The appellant turned himself in to police on December 16, 2003.

Although the appellant had been charged with two counts of first degree murder and one count of especially aggravated robbery, the jury convicted him of two counts of second degree murder. The trial court merged the convictions and sentenced the appellant to twenty years to be served at one hundred percent. The appellant filed a motion for new trial,[2] which the trial court denied, and this appeal followed.

## II. Analysis

### A. Sequential Jury Instructions

The appellant claims that the trial court instructed the jury to consider the appellant's guilt on the lesser included offenses of first degree murder in improper sequential order. Specifically, he contends that instead of ordering the jury to consider the appellant's guilt on first degree murder, second degree murder, facilitation of first degree murder, and then facilitation of second degree murder, the trial court should have ordered the jury to consider the appellant's guilt in the following order: first degree murder, facilitation of first degree murder, second degree murder, and facilitation of second degree murder. The State argues that the trial court's instructions to the jury were proper. We agree with the State.

After the last witness testified, the trial court went over the jury instructions with the parties. The trial court announced that it planned to instruct the jury on first degree premeditated murder and its lesser included offenses in the following order: second degree murder, facilitation of first degree murder, facilitation of second degree murder, voluntary manslaughter, facilitation of voluntary

---

[2]We note that according to the appellant's brief, the trial court sentenced the appellant on March 17, 2006, and that the appellant "timely filed his motion for judgment of acquittal or, alternatively, for a new trial" on April 28, 2006. The judgment of conviction form in the appellate record confirms that it was entered on March 17. The copy of the new trial motion in the appellate record shows that the motion was filed on April 28. However, a motion for new trial must be made in writing or reduced to writing within thirty days of the "date the order of sentence is entered." Tenn. R. Crim. P. 33(b). Therefore, the appellant's new trial motion appears to be untimely. However, in response to an order entered by this court on December 3, 2007, the Criminal Court Clerk for the Thirtieth Judicial Circuit at Memphis has supplemented the record with a motion for new trial filed by the appellant on April 7, 2006. Therefore, the appellant's new trial motion was timely filed.

manslaughter, reckless homicide, and criminally negligent homicide. The trial court informed the parties that the jury should consider the appellant's guilt on second degree murder before facilitation of first degree murder because, although both offenses were Class A felonies, "second degree murder carries a greater punishment [because it] is a 100% crime." The defense objected, arguing that the trial court should instruct the jury to consider facilitation of first degree murder before second degree murder. The trial court refused, stating that "I would imagine that the state would want to charge the more serious crime as a lesser, before they moved down to the less serious crime."

In its jury charge, the trial court instructed the jury on first degree premeditated and felony murder and the lesser included offenses of second degree murder, voluntary manslaughter, reckless homicide, and criminally negligent homicide. Later in the instructions, the trial court instructed the jury on facilitation and told the jury that it was first to consider the appellant's guilt on the indicted offense of first degree murder. If the jurors found him guilty, they were to so indicate on the verdict form and cease deliberation. However, if the jury found the appellant not guilty of first degree murder, the jury was to determine the appellant's guilt on the lesser included offense of second degree murder. If the jury found him guilty of second degree murder, it was to indicate the conviction on the verdict form and cease deliberation. However, if the jury found the appellant not guilty of second degree murder, the jury was to determine the appellant's guilt on the lesser included offense of facilitation of first degree murder. The appellant argues that such sequential instructions were improper.

In State v. Burns, 6 S.W.3d 453, 466 (Tenn. 1999), our supreme court stated as follows:

> The Tennessee criminal code is structured to define offenses and assign degrees of punishment by determining the completion of the crime, the culpability of the individual criminal actor, and the degree of perceived harm to the victim or society as a whole. The crime carried to completion, the more responsible party, and the more serious offenses merit harsher penalties. In a general sense, the various criminal offenses can be visualized as "layers," with the most serious, culpable versions of each type of crime at the top, meriting the most severe punishment. Correspondingly, underneath are the less serious versions in decreasing order of seriousness and culpability and with consequently less serious punishment.

Furthermore, a jury should consider the greater charged offense before considering the lesser included offenses in descending, "sequential order." See Tennessee Pattern Jury Instruction 41.01 & n.1--Criminal (11th ed. 2007). This court has repeatedly upheld sequential jury instructions. State v. Raines, 882 S.W.2d 376, 382 (Tenn. Crim. App. 1994), perm. to appeal denied, (Tenn. 1994); see also State v. Mann, 959 S.W.2d 503, 521 (Tenn. 1997) (appendix).

Second degree murder is the immediate lesser included offense of first degree murder. See State v. Ely, 48 S.W.3d 710, 720-722 (Tenn. 2001) (holding that second degree murder is a lesser included offense of first degree felony murder under part (b) of the Burns test); State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998) (noting that second degree murder is the immediate lesser

-4-

included offense of first degree murder); <u>State v. Thomas Gatewood</u>, No. M2001-01871-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 481, at \*\*19-20 (Nashville June 5, 2002), <u>perm. to appeal denied</u>, (Tenn. 2002) (providing that second degree murder is a lesser included offense of first degree premeditated murder). Facilitation is also a lesser included offense of first degree murder when a defendant is charged with criminal responsibility for the conduct of another. <u>See</u> <u>State v. Rice</u>, 184 S.W.3d 646, 676 (Tenn. 2006); <u>State v. Reid</u>, 91 S.W.3d 247, 299 (Tenn. 2002). The appellant contends that although <u>State v. Locke</u>, 90 S.W.3d 663, 672 (Tenn. 2002), provides that facilitation of first degree murder is not an immediate lesser include offense of first degree murder under part (b) of the <u>Burns</u> test, facilitation is an immediate lesser included offense under <u>Burns</u>, part (c), and should be considered by the jury before second degree murder.

Both second degree murder and facilitation of first degree murder are Class A felonies. <u>See</u> Tenn. Code Ann. §§ 39-13-210(c), -11-117(a)(1), -39-11-403(b). Second degree murder is the unlawful, intentional, or knowing killing of another. Tenn. Code Ann. § 39-13-210. "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). Pursuant to these definitions, a person convicted of second degree murder is a principal offender. For facilitation, however, the person only furnishes substantial assistance in another person's commission of the crime. Moreover, a person convicted of second degree murder is a "violent offender" who must serve one hundred percent of his or her sentence, whereas a person convicted of facilitation is not designated a violent offender and may become eligible for parole after serving only thirty percent of the sentence. <u>See</u> Tenn. Code Ann. § 40-35-501(i)(1), (i)(2)(B). Therefore, even if second degree murder and facilitation of first degree murder are both immediately lesser included offenses of first degree murder, we agree with the trial court that second degree murder is the more culpable, serious offense. Given that this court has repeatedly upheld sequential jury instructions, we conclude that the trial court did not err by instructing the jury to determine the appellant's guilt on the lesser included offense of second degree murder before it considered his guilt on facilitation of first degree murder.

### B. Criminal Responsibility

The appellant raises several arguments regarding the trial court's instructing the jury on criminal responsibility. First, he contends that the trial court erred by instructing the jury on criminal responsibility because criminal responsibility was not alleged in the indictments and, therefore, he did not receive notice that he could be held criminally responsible for the conduct of another. Second, he contends that instructing the jurors on criminal responsibility allowed the jury to find him guilty without determining beyond a reasonable doubt that he committed the elements of the principal offense. Third, he argues that the acts specified by the legal doctrine of criminal responsibility are elements of the principal offense and must be found by the jury beyond a reasonable doubt. Finally, he contends that the trial court failed to inform the jury that in order for it to find him guilty of the crimes under a theory of criminal responsibility, it had to conclude he did so beyond a reasonable doubt. The State argues that the trial court properly instructed the jury on criminal responsibility. We agree with the State.

"A person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401(a). Tennessee Code Annotated section 39-11-402(2) provides that an appellant is criminally responsible for the actions of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [the appellant] solicits, directs, aids, or attempts to aid another person to commit the offense." The appellant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). The defendant's requisite criminal intent may be inferred from his "presence, companionship, and conduct before and after the offense." State v. McBee, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982). "An indictment that charges an accused on the principal offense 'carries with it all the nuances of the offense,' including criminal responsibility." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999) (quoting State v. Lequire, 634 S.W.2d 608, 615 (Tenn. Crim. App. 1981)). A defendant convicted under a criminal responsibility theory "is guilty in the same degree as the principal who committed the crime" and "is considered to be a principal offender." Id. at 171.

"It is the duty of a trial judge to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). In other words, "a defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Generally, the trial court must instruct the jury on the rules of law applicable to the issues that are fairly raised by the evidence adduced at trial. State v. Townes, 56 S.W.3d 30, 36 (Tenn. Crim. App. 2000), overruled on other grounds by State v. Terry, 118 S.W.3d 355 (Tenn. 2003). In determining whether jury instructions are erroneous, this court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998).

In this case, the indictments charged the appellant and Jones with two counts of first degree murder and especially aggravated robbery. The defense objected to the trial court's decision to instruct the jury on criminal responsibility due to lack of notice. The trial court overruled the objection, stating, "The criminal responsibility law is a valid law and I don't have any problem with ruling that you have actual notice and that even if you didn't that you should be put on notice by the indictment [charging] both [defendants] together."

Although criminal responsibility was not included in the indictments, we conclude that it was properly raised by the evidence and charged by the trial court. The evidence at trial revealed that the appellant and Jones went to the apartment complex in order for the appellant to confront the victim. Armed with guns, the appellant and Jones approached him. According to Marcus Tubbs, an eyewitness to the crimes, Jones pulled out a gun, pushed passed the appellant, ordered the victim out of the car, ordered the victim to the ground, and checked the victim's pockets and shoes for money. Jones asked the appellant if he should kill the victim. Although Tubbs did not hear the appellant's response, he saw Jones walk up to the victim and shoot him in the head. Christen Williams told police that the appellant claimed before the shooting that he was going to

-6-

kill the victim. From the testimony, the jury reasonably could have concluded that the appellant and Jones went to the apartment complex with the requisite intent to harm the victim and that, although the appellant did not shoot the victim, he directed or aided Jones in the victim's death. Therefore, the trial court did not err by providing the criminal responsibility instruction.

Moreover, the State still was required to prove the elements of the principal offense beyond a reasonable doubt. The fact that the jury found the appellant guilty of the lesser included offense of second degree murder demonstrates that the jury carefully considered the elements of the charged offense. Although the jury concluded that the elements of first degree murder were not present, it obviously concluded that the State had proven the elements of second degree murder. While the appellant does not contest the sufficiency of the evidence, taken in the light most favorable to the State, the evidence is sufficient for the jury to conclude that the appellant was criminally responsible for second degree murder.

As for the appellant's claim that the acts specified by the legal doctrine of criminal responsibility are elements of the principal offense, we note that "criminal responsibility is not a separate, distinct crime." Lemacks, 996 S.W.2d at 170. Instead, it is "a theory by which the State may prove the defendant's guilt of the alleged offense." Id. Therefore, the acts specified by the legal doctrine of criminal responsibility are not "elements" of the principal offense. Furthermore, our review of the jury instructions shows that the trial court instructed the jury as follows:

> A defendant who is criminally responsible for an offense may be found guilty, not only of that offense but also for any other offense, or offenses committed by another . . . [i]f you find beyond a reasonable doubt that the other offense, or offenses committed were natural and probable consequences of the original offense for which the defendant is found criminally responsible and that the elements of the other offense, or offenses that accompanied the original offense have been proven beyond a reasonable doubt.

> Before you find the defendant guilty of being criminally responsible for said offenses committed by the conduct of another, you must find that all of the essential elements of said offenses have been proven by the state beyond a reasonable doubt.

The trial court's instruction tracked Tennessee Pattern Jury Instruction 3.01, criminal responsibility for the conduct of another, and was a correct statement of the law. Therefore, the appellant is not entitled to relief.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____

NORMA McGEE OGLE, JUDGE