# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 7, 2014

## RASHE MOORE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**Nos. 00-06306, 00-06313 – 00-06317    W. Otis Higgs, Jr., Judge[1]**

---

**No. W2013-00674-CCA-R3-PC  -  Filed April 22, 2014**

---

In this post-conviction appeal, the Petitioner contends that he received the ineffective assistance of counsel at trial because trial counsel was deficient in failing to file a written motion requesting jury instructions on lesser-included offenses and that this failure resulted in prejudice because it precluded appellate review of the trial court's refusal to instruct the jury on any lesser-included offenses. After a review of the record and the applicable authorities, we reverse the judgment of the post-conviction court with respect to trial counsel's failure to file a written motion requesting an instruction on lesser-included offenses of especially aggravated kidnapping. We affirm the judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court
Reversed in Part and Affirmed in Part; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. ROGER A. PAGE, J., concurring in part and dissenting in part in a separate opinion.

James P. Coleman (on post-conviction appeal) and Charles Mitchell (at post-conviction hearing), Memphis, Tennessee, for the appellant, Rashe Moore.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Amy P. Weirich, District Attorney General; Charles Summers and David Zak, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

In 2000, a Shelby County grand jury indicted the Petitioner for the following offenses:

---

[1] Judge Joseph B. Dailey presided over the Petitioner's trial.

six counts of aggravated rape, Nos. 00-06306, 00-06313, and 00-06314; seven counts of especially aggravated kidnapping, No. 00-06315; five counts of aggravated robbery, No. 00-06316; and one count of aggravated burglary, No. 00-06317. The Petitioner was tried by a jury in February of 2002.

The following relevant evidence was presented at trial.

On the evening of July 21, 1999, Albert Smith was at his home in Memphis, Tennessee, with his eight-year-old son Kevin Smith and his friend [D.T.[2]]. Albert answered a knock on the door, while [D.T.] and Kevin remained on the couch in the den. The person at the door was an older man who began arguing with Albert. The man had a handgun and eventually forced his way into the house. The man ordered everyone to give him everything they had and get down on the floor in the den.

Moments later, a second younger man arrived. [D.T.] later described the younger man as being short and having a round face and a low haircut (almost bald). The younger man was also armed with a handgun. The man told them that he "wanted the money" and began ransacking the house.

A few minutes later, Albert's roommate, Joshua Jones, arrived at the house. Joshua was accompanied by [S.K.] and [L.K.]. As Joshua and the two girls attempted to enter the house, Albert tried to warn them of what was happening. The armed men forced everyone into the house at gunpoint. The men then robbed Joshua and the two girls. All of the victims were forced to strip down to their underwear and lie on the floor in the den.

The older man ordered [L.K.] into another room while the younger man held the rest of the victims at gunpoint. He forced her to perform fellatio upon him while holding a gun to her head. The older man and [L.K.] then returned to the den. Next, the younger man ordered [S.K.] into a different room and forced her to perform fellatio upon him. During this time, the older man remained in the den and held the other victims at gunpoint. A pager belonging to one of the victims sounded, and the older man fired his gun. Hearing the gunshot, the younger man and [S.K.] returned to the den.

The men ordered everyone into the kitchen. All of the victims were forced to lie together in a heap on the kitchen floor. The men taped the

---

[2] We will refer to the aggravated rape victims throughout this opinion by their initials to protect their privacy.

victims' hands and feet together with duct tape. The victims were then covered with a sheet, blocking their view of the events that happened after that time. While under the sheet, the victims heard additional intruders enter the house. All of the men were making threats and going through the house. The victims testified that they were terrified. At one point, the eight-year-old urinated on himself.

While the victims were still piled in the kitchen, the older man ordered [D.T.] into the other room. He forced her to kiss him on the mouth. The older man attempted to penetrate her vaginally from the rear with his penis and then, ultimately, penetrated her vaginally from the front. She was then ordered into the bathroom to clean herself. Around the same time that [D.T.] was in the bathroom, Marcus Stewart arrived at the house. Marcus knocked on the door but no one answered. While Marcus remained outside, one of the men went out a back door and ran around the house. He came up behind Marcus and forced him into the house at gunpoint. The men then robbed Marcus. They pulled his shirt over his head and pulled his pants down around his ankles. He was then ordered into the kitchen with the other victims and was also bound with duct tape.

After Marcus arrived, the older man came back and put a pillowcase over [D.T.]'s head. The men then took her into another room. One of the men stated that he was going to shoot her. Instead, he put on a condom and forced his penis into her mouth. Another assailant, [placed a sandwich bag on his penis and] then forced [it] into her mouth. An unknown number of assailants vaginally penetrated her. She was then ordered back into the kitchen with the other victims. The assailants left and the incident was reported to the police. The entire ordeal lasted approximately two hours.

The younger man involved in the attack was later identified as [the Petitioner]. [D.T.], Albert Smith, and [S.K.] each identified the [Petitioner] in a photo line-up conducted after the incident. Those three witnesses, along with [L.K.], also identified the [Petitioner] in court.

State v. Rashe Moore, No. W2002-01195-CCA-R3-CD, 2003 WL 22888881, at *2 (Tenn. Crim. App. Dec. 3, 2003).

At the conclusion of the proof, the trial court declined to instruct the jury as to any lesser-included offenses and explained,

As far as the lesser-included offenses are concerned, given the nature of the defense in this case, I don't know that any lesser would be appropriate. I mean from the outset, the defense has conceded that all of these terrible offenses did occur; it just wasn't the defendant that committed them. And he even took the stand and said that it wasn't him; he was elsewhere.

The defense argued orally that, despite its theory of the case – that the Petitioner was misidentified – the trial court should at least charge facilitation. The trial court declined to do so and explained its reasoning as follows:

> [A] reasonable reading of the proof . . . the question was asked by [the prosecution], I believe of every witness – or at least of most – did your client, at any time, appear as though he wasn't fully cooperating – appear as though he was being coerced – appear as though he didn't want to be there, didn't want to – that his role was somehow less than the other. And I . . . remember the proof indicating that both of those two men that came in initially – the older and the younger [who was identified as the Petitioner] – were both armed and fully participating. One was holding the guy while the other was going through the house ransacking the rooms. Both held the guns while the rapes were being committed.

The trial court concluded, "I just don't think there is any proof" that the Petitioner "was simply there to facilitate [the co-defendant] committing these offenses. I think it's an all or nothing defense that has been presented." Therefore, "if the jury concludes that your client was there, then I just don't see any proof at all, from the State's witnesses, that would suggest that your client's role was anything less than a full participant in these crimes."

The jury ultimately convicted the Petitioner of the following: Four counts of aggravated rape as charged in No. 00-06306 and in No. 00-06313, the aggravated rapes of L.K. and S.K. Regarding the two counts of aggravated rape involving D.T. in No. 00-06314, the jury found the [Petitioner] guilty as charged, specifically noting that it found the Petitioner guilty of both the initial instance of aggravated rape when D.T. was taken into the bathroom and the subsequent instance of aggravated rape involving multiple perpetrators. The jury also found the [Petitioner] guilty as charged of seven counts of especially aggravated kidnapping, five counts of aggravated robbery, and one count of aggravated burglary.

Regarding No. 00-06306, the trial court sentenced the [Petitioner] for aggravated rape on count one to twenty-one years confinement at 100% as a violent offender, consecutive to

his other sentences, and count two was dismissed. Regarding No. 00-06313, the trial court merged the two convictions for aggravated rape and sentenced the [Petitioner] to twenty-one years confinement at 100% as a violent offender, consecutive to his other sentences. Regarding No. 00-06314, the trial court merged the [Petitioner]'s two convictions for aggravated rape and sentenced the [Petitioner] to twenty-one years confinement at 100% as a violent offender, consecutive to his other sentences. For each of the seven convictions for especially aggravated kidnapping under No. 00-06315, the trial court sentenced the [Petitioner] to twenty-one years confinement at 100% as a violent offender, with each sentence to run concurrent to the others under this indictment number and consecutive to the other sentences imposed. For each of the five convictions for aggravated robbery under No. 00-06316, the trial court sentenced the [Petitioner] to eleven years confinement at 30% as a standard offender, with each sentence to run concurrent to the others under this indictment number and consecutive to the other sentences imposed. For the aggravated burglary conviction under No. 00-06137, the trial court sentenced the [Petitioner] to four years confinement at 30% as a standard offender to run consecutive to the other sentences imposed. The [Petitioner] received an effective sentence of ninety-nine years. See id. at *1.

The Petitioner appealed to this court, citing multiple errors, one of which was the trial court's failure to instruct the jury on the applicable lesser-included offenses. Upholding the Petitioner's convictions and sentence, this court concluded that the above issue had been waived because trial counsel failed to file a written motion requesting instructions on lesser-included offenses as required by Tennessee Code Annotated section 40-18-110(c); the issue was not reviewed on the merits. See id. at *8.

The Petitioner filed a pro se petition for post-conviction relief on April 5, 2005, listing multiple grounds for relief. An amended petition was filed on June 20, 2012, and it also contained multiple grounds for relief; as relevant to this appeal, one such ground was trial counsel's failure to file a written request for lesser-included offenses. The evidentiary hearing was held on November 15, 2012, and the following relevant evidence was presented.

Trial counsel testified that he orally requested that the trial court instruct the jury on the lesser-included offense of facilitation. He admitted that he was unaware that a written motion was required because he had always requested them orally with no problems and that he first learned of the written requirement when the trial court rejected his argument. Trial counsel stated that he did not believe that the failure to get the requested jury instructions influenced the outcome of the case. He explained that he and the Petitioner

> . . . were very hopeful, anything that would help him would work. But no, in reality the jury was going to believe he was there and participated in these things, or they weren't.

We weren't denying that these things happened. He didn't deny. I didn't, as his lawyer, deny it. They were horrible – if you had been in the courtroom the allegations were horrible, the women cried, the women were very upset and emotional. Even the male witnesses were terrified, or at least, testified to being terrified and appeared to be genuine in that.

Trial counsel further explained that their defense was that the Petitioner was innocent and that he had been misidentified by the witnesses. Trial counsel admitted that the defense was "an unbelievable long shot" but thought the Petitioner did the best he could. He explained that he did not see a point in pursuing other defenses because the Petitioner was adamant about being innocent and maintained that position throughout his representation.

The Petitioner testified that trial counsel never discussed jury instructions with him prior to trial and that trial counsel viewed the case as "all or nothing," meaning that the Petitioner would be found guilty or not guilty as indicted. He further testified that he told trial counsel that a written motion requesting instructions on lesser-included offenses was required but that trial counsel requested it orally anyway.

The post-conviction court, denying relief, issued the following findings:

. . . [Trial counsel] did motion the trial court orally to charge lesser-included offenses, including facilitation, but the trial judge denied the motion. The trial court found that there was no factual basis to support a charge of facilitation. The trial court denied the motion for lesser-included offenses on its merits, and not because [trial counsel] failed to file a written motion. There is additionally no evidence to suggest that the trial court would have granted Petitioner's motion for any additional lesser-included offenses had [trial counsel] filed a written motion.

As [trial counsel] testified, there were multiple eyewitnesses who identified Petitioner as the perpetrator and the jury found Petitioner guilty as charged on every count. [Trial counsel] testified in the evidentiary hearing that the lesser-included offenses were irrelevant because they did not help the defense's theory of the case. Petitioner's defense was that he was simply not present when the crimes took place or involved in any way. The jury was going to find that Petitioner was the alleged perpetrator or that he simply was not involved or present during these alleged crimes. The Court is unconvinced that this alleged error prejudiced Petitioner's case. This Court finds that Petitioner has failed to show that but for [trial counsel's] failure to file a written motion for lesser-included offenses, the outcome of his case would

-6-

have been different.

ANALYSIS

In this appeal, the Petitioner contends that trial counsel's assistance was ineffective because he failed to file a written motion requesting jury instructions on all applicable lesser-included offenses and that this failure precluded appellate review of the trial court's refusal to instruct the jury on lesser-included offenses. The State concedes that trial counsel's lack of knowledge regarding the necessity of filing a written motion for lesser-included offenses was deficient; however, the State responds that the Petitioner failed to show how trial counsel's deficiency prejudiced him.

Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove his factual allegations supporting the grounds for relief contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See Nichols v. State, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

## *I. Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the post-conviction court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct

-7-

unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The post-conviction court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The performance prong requires a defendant raising a claim of ineffectiveness to show that counsel's representation was deficient, thus fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697, 700. The Strickland standard has also been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 687; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The record reflects that trial counsel failed to make a written request for jury instructions on lesser-included offenses of the offenses for which the Petitioner was charged. Tennessee Code Annotated section 40-18-110(c), as amended in 2001, clearly states, "Absent a written request, the failure of a trial judge to instruct the jury on any lesser-included offense may not be presented as a ground for relief either in a motion for new trial or on appeal." Similarly, our supreme court has held that "if a defendant fails to request an instruction on

a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for new trial or on appeal." State v. Page, 184 S.W.3d 223, 229 (Tenn. 2006) (citing Tenn. Code Ann. § 40-18-110(c)). On direct appeal, this court, relying on Tennessee Code Annotated section 40-18-110(c), concluded that the issue had been waived for failure to file a written motion and did not review the issue on the merits. Moore, 2003 WL 22888881, at *8. Therefore, we must conclude that trial counsel was deficient for failing to file a written motion for instructions on lesser-included offenses.

Nevertheless, to prevail on his claim of ineffective assistance of counsel, the Petitioner must prove prejudice. Specifically, he must show (1) that the trial court should have charged the applicable lesser-included offenses; (2) that trial counsel's failure to file a written motion requesting such precluded this court from addressing the issue on appeal; and (3) that there is a reasonable probability that he would have prevailed on appeal. See Derrick Sutton v. State, No. W2010-01413-CCA-R3-PC, 2011 WL 2899079, at *5 (Tenn. Crim. App. July 19, 2011). Our review of the record reveals that the trial court did not charge the jury with any lesser-included offenses, only the offenses as charged in the indictment. Therefore, we must first determine whether there were any applicable lesser-included offenses to the indicted offenses. The Petitioner insists that the following were lesser-included offenses of the offenses for which he was indicted and should have been presented for the jury's consideration:

> The lesser-included offenses for the indicted charge of aggravated rape are as follows: rape, aggravated sexual battery, and sexual battery. For the indicted charge of especially aggravated kidnapping the lesser-included offenses are aggravated kidnapping, kidnapping, false imprisonment, and attempted false imprisonment. The lesser-included offenses for the indicted charge of aggravated [robbery] are as follows: facilitation of aggravated robbery, attempted aggravated robbery, robbery, facilitation of attempted aggravated robbery, attempted robbery, facilitation of robbery, aggravated assault, assault, and theft . . . . [Finally, the lesser-included offenses for aggrava]ted burglary [are as follows:] burglary, facilitation of burglary, aggravated criminal trespass, attempted aggravated criminal trespass, and criminal trespass.

Our supreme court has provided the following test to determine whether an offense is a lesser-included offense:

An offense is a lesser-included offense if:

(a) all of its statutory elements are included within the statutory

elements of the offense charged; or

> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

>> (1) a different mental state indicating a lesser kind of culpability; and/or

>> (2) a less serious harm or risk of harm to the same person, property or public interest; or

> (c) it consists of

>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

>> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

> State v. Burns, 6 S.W.3d at 466-67. Where "a lesser offense is not included in the offense charged, then an instruction should not be given, regardless of whether evidence supports it." Id. at 467. Thus, if the purported lesser-included offense is not actually a lesser-included offense, then the court's inquiry ends.

State v. Banks, 271 S.W.3d 90, 125 (Tenn. 2008).

As a preliminary matter, we agree with the Defendant's assertion that the above-listed offenses are lesser-included offenses of those listed in his indictment. However, even if "a lesser offense is included in the charged offense, the question still remains whether the evidence justifies a jury instruction on such lesser offense." Id. (quoting Burns, 6 S.W.3d at 466-67). Tennessee Code Annotated section 40-18-110(a) addresses the standard for assessing whether the evidence is sufficient to require an instruction on a lesser-included offense. It provides that

the trial judge shall not instruct the jury as to any lesser-included offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser-included offense. In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgment on the credibility of evidence. The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id.

Generally, "evidence that is sufficient 'to warrant an instruction on the greater offense also will support an instruction on a lesser offense under Part (a) of the Burns test.'" Banks, 271 S.W.3d at 125 (quoting State v. Allen, 69 S.W.3d 181,188 (Tenn. 2002)). The erroneous omission of a lesser-included offense instruction is not negated merely because the evidence also is sufficient to convict on the greater offense. State v. Bowles, 52 S.W.3d 69, 75 (Tenn. 2001). A defendant need not demonstrate a basis for acquittal on the greater offense to be entitled to an instruction on the lesser offense. Allen, 69 S.W.3d at 187-88 (Tenn. 2002) (citing Bowles, 52 S.W.3d at 75).  The trial court must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense. Id.  The evidence, not the theories of the parties, controls whether an instruction is required. Id.

However, narrowing the application of Part (c) of the Burns test, our supreme court has made it clear that instructions are unnecessary where the evidence clearly establishes completion of the criminal act – applicable only to attempt and solicitation – or simply does not involve proof of solicitation or facilitation. Banks, 271 S.W.3d at 125; State v. Wilson, 211 S.W.3d 714, 721 (2007); see also State v. Marcum, 109 S.W.3d 300, 303-04 (Tenn. 2003); State v. Ely, 48 S.W.3d 710, 719 (Tenn. 2001).  This result follows because for the "lesser offenses under part (c), proof of the greater offense will not necessarily prove the lesser offense." Allen, 69 S.W.3d at 188.

A trial court's failure to give an instruction on an offense that is, in fact, a lesser-included offense and supported by the evidence is a non-structural constitutional error. Banks, 271 S.W.3d at 126 (citing State v. Page, 184 S.W.3d 223, 230 (Tenn. 2006)). "When such a failure occurs, a new trial must be granted unless the reviewing court determines that the error was harmless beyond a reasonable doubt." Id. (citing State v. Thomas, 158 S.W.3d 361, 379 (Tenn. 2005)); see also State v. Rodriguez, 254 S.W.3d 361, 371 (Tenn. 2008). When conducting a harmless error analysis in this context, the reviewing court "should conduct a thorough examination of the record, including the evidence presented at trial, the

defendant's theory of defense, and the verdict returned by the jury." Banks, 271 S.W.3d at 126 (quoting State v. Allen, 69 S.W.3d at 191). If no reasonable jury would have convicted the defendant of the uncharged lesser-included offense rather than the offense for which the defendant was convicted, then the failure to charge is harmless beyond a reasonable doubt. State v. Locke, 90 S.W.3d 663, 675 (Tenn. 2002).

*A. Lesser-included Offenses of Aggravated Rape*

Aggravated rape, as relevant here, is unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:

> (1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;
>
> . . . .
>
> (3) The defendant is aided or abetted by one (1) or more other persons; and
>
> (A) Force or coercion is used to accomplish the act[.]

Tenn. Code Ann. § 39-13-502. Rape, as relevant here, is unlawful sexual penetration of a victim by the defendant or of the defendant by a victim where force or coercion is used to accomplish the act. Id. § 39-13-503. Sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim and force or coercion is used to accomplish the act. Id. § 39-13-505. "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Id. § 39-13-501(6). Sexual battery, as applicable to this case, is "aggravated" when a weapon, force, or coercion is used to accomplish the act. Id. § 39-13-506.

As previously noted, the following offenses are lesser-included offenses of aggravated rape: rape, aggravated sexual battery, and sexual battery. However, a trial court is not required to charge the jury regarding the lesser-included offense unless the record contains evidence which reasonable minds could accept as to the lesser-included offense. See Banks, 271 S.W.3d at 125. After a review of the record, we conclude that the trial court properly declined to charge any lesser-included offenses to the indicted charge. Because the aggravated rape indictments listed multiple victims, we will address each victim in turn.

-12-

*1.  D.T.*

The two-count indictment involving D.T. alleged two different instances of rape: the first by the co-defendant at gunpoint and the second by approximately four to five men shortly after they removed her from the area where the other victims were being held. Regarding the second instance, she testified that the men placed a pillowcase over her head, stood her up saying that they were going to shoot her, and placed her in another room where multiple men raped her vaginally and orally.  Also, L.K. testified that the men took D.T. from under the sheet in the kitchen where the victims were being held, and a short time later, she heard D.T. screaming and crying and a headboard banging against the wall.  Further, S.K. testified that she also heard crying and "thumping" while D.T. was with the men and that when D.T. returned to the kitchen, D.T. was crying and said that she was bleeding.  All three women identified the Petitioner as one of the men holding them at gunpoint.  This evidence was not contradicted at trial.

The difference between offenses classified as rape and those classified as sexual battery is penetration.  See Tenn. Code Ann. §§ 39-13-501, -502, -505.  "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Id. § 39-13-501. (emphasis added).  Based upon the above uncontested evidence, the victim was clearly penetrated in both instances, and there is no testimony about any sexual contact other than penetration, which rules out the sexual battery offenses.  Further, during the first instance, a gun was used to accomplish penetration; and during the second instance, there were multiple offenders, and force was used to accomplish the same; thus, both factual bases also rule out an instruction on rape and support the charge of aggravated rape.  See id. § 39-13-502, -503.  As such, there was no evidence presented which reasonable minds could accept as to the lesser-included offenses, and the trial court did not err in failing to instruct the jury as to such offenses.

*2.  L.K. and S.K.*

At trial, L.K. testified that, after the defendants took the items on their person, forced them to remove their clothes, and confined her and the other victims to the kitchen, the co-defendant made her get up and perform oral sex on him. She explained that the co-defendant put his penis in her mouth, put the gun to her head, and told her to suck.  L.K. further explained that he told her that he would shoot her if she did not do it. During this time, she saw the Petitioner take S.K. to the back room but did not see what they were doing.  S.K. testified that when the Petitioner was taking her to the back room, she saw L.K. being forced to perform oral sex on the co-defendant. S.K. further testified that when she and the

-13-

Petitioner got to the back room, the Petitioner made her perform oral sex on him without a condom and that the Petitioner still had his gun. Both L.K.'s and S.K.'s testimonies established that sexual penetration, as defined above, occurred in both instances, and there was no testimony regarding sexual contact other than that of penetration, ruling out the sexual battery offenses. They also established that both men used guns; this uncontroverted evidence firmly established that force was used while the defendants were armed to accomplish the rapes. Thus, there was no factual basis to support instructions on any lesser-included offenses.

Although the Petitioner does not allege that facilitation should have been charged as a lesser-included offense to the aggravated rape offenses, we are inclined to note that L.K.'s and S.K.'s testimonies also established that the Petitioner was criminally responsible for the acts solely committed by his co-defendant. Tennessee Code Annotated section 39-11-402(2) states that a person is criminally responsible for the actions of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense. . . ." That person must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). The defendant's requisite criminal intent may be inferred from his "presence, companionship, and conduct before and after the offense." State v. McBee, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982). "An indictment that charges an accused on the principal offense 'carries with it all the nuances of the offense,' including criminal responsibility." State v. Lemacks, 996 S.W.2d 166, 173 (Tenn. 1999) (quoting State v. Lequire, 634 S.W.2d 608, 615 (Tenn. Crim. App. 1981)). A defendant convicted under the theory of criminal responsibility "is guilty in the same degree as the principal who committed the crime" and "is considered to be a principal offender." Id. at 171. No particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible. State v. William Patrick Peebles, No. M2011-01312-CCA-R3-CD, 2013 WL 2459881, at *5 (Tenn. Crim. App. June 06, 2013) (citing Lemacks, 996 S.W.2d at 170).

S.K. testified that when the Petitioner was forcing her to the back room to make her perform oral sex on him, she saw L.K. being forced to give the co-defendant oral sex, establishing that the Petitioner was aware of his co-defendant's conduct. Further, as discussed in more detail below, the Petitioner's conduct, presence, and companionship with his co-defendant after-the-fact establishes that he was operating with similar intent as that of his co-defendant. This supports the Petitioner's being convicted of the aggravated rape of L.K., despite evidence that he was not the actual perpetrator, on the basis of criminal responsibility; facilitation can only be found in the absence of the aforementioned intent.

-14-

Likewise, there is evidence in the rapes of D.T. to support the Petitioner's culpability under the theory of criminal responsibility, if not as a principal: regarding the first instance of aggravated rape, D.T. testified that the Petitioner walked in on her in the bathroom just after the rape, where the co-defendant was forcing her to wash herself after he ejaculated inside her, to give her the phone, making her answer it because it was ringing. Also, Joshua and L.K. testified that after the men took D.T. from the place where the rest of the victims were confined, they did not hear any additional voices in the room until D.T. returned, notable because the witnesses testified to hearing voices and conversations prior to and after that. Further, the Petitioner, even if not physically participating in the aggravated rapes, aided the co-defendant and unknown assailants in accomplishing the acts because he held the other victims at gunpoint during the aggravated rapes, preventing interruption while the acts were in progress. Given this evidence, we conclude that no reasonable jury would have found the Petitioner guilty of facilitation of aggravated rape over the indicted charge; therefore, any error in failing to instruct the jury on facilitation would have been harmless.

*B. Lesser-included Offenses of Especially Aggravated Kidnapping*

Tennessee Code Annotated section 39-13-302 states that false imprisonment is committed when a person knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty. Kidnapping is false imprisonment as defined in section 39-13-302, under circumstances exposing the other person to substantial risk of bodily injury. Id. § 39-13-303. As relevant here, aggravated kidnapping is false imprisonment while the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon. Id. § 39-13-304. Especially aggravated kidnapping, relevant to the instant case, is defined as false imprisonment that is accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. Id. § 39-13-305.

As previously noted, aggravated kidnapping, kidnapping, false imprisonment, and attempted false imprisonment are all considered lesser-included offenses of especially aggravated kidnapping. Nevertheless, after reviewing the record, the Petitioner's theory of the case, and the applicable authorities, we conclude as follows. First, the trial court was not in error for failing to instruct the jury on attempted false imprisonment as a lesser-included offense of especially aggravated kidnapping because, given that the evidence very clearly demonstrated that the act was completed, an attempt instruction was not required. See Banks, 271 S.W.3d at 125. Second, the trial court's failure to instruct the jury as to false imprisonment and kidnapping was not reversible error because the evidence was overwhelming and uncontroverted that a gun was used to accomplish the acts regarding all seven victims. See State v. Locke, 90 S.W.3d 663, 675 (Tenn. 2002) ("While we are aware that the jury could conceivably have convicted Locke of aggravated robbery or robbery had

it been instructed on those offenses, we conclude beyond a reasonable doubt that because the evidence was totally uncontroverted and overwhelming that a deadly weapon was used in the robbery and the victim suffered serious bodily injury resulting in his death, no reasonable jury would have convicted on the lesser offenses instead of the charged offense of especially aggravated robbery."). Finally, the trial court's failure to instruct the jury on the remaining lesser-included offense constitutes reversible error because we cannot conclude beyond a reasonable doubt that a reasonable jury would not have convicted the Petitioner of aggravated kidnapping instead of especially aggravated kidnapping. See id. at 673.

While the evidence supports the indicted offense, it also supports the lesser-included offense previously mentioned. As stated in Allen, "evidence sufficient to warrant an instruction on the greater offense also will support an instruction on a lesser offense under part (a) of the Burns test. In proving the greater offense, the State necessarily has proven the lesser offense because all of the statutory elements of the lesser offense are included in the greater." 69 S.W.3d at 188 (citing Bowles, 52 S.W.3d at 80); Locke, 90 S.W.3d at 674. Although the record clearly demonstrates that both the Petitioner and his co-defendant had weapons, the evidence and the very nuanced differences in the elements of especially aggravated kidnapping and aggravated kidnapping, present reasonable doubt as to whether the failure to charge the lesser-included offense affected the outcome of the Petitioner's trial. It is for these reasons that we conclude that the trial court's failure to instruct the jury as to aggravated kidnapping is reversible error. Given this conclusion, we must also conclude that trial counsel's failure to file a written motion requesting instructions prejudiced the Petitioner because if the written motion had been filed, even if it was denied, this court would have reviewed the issue on the merits on direct appeal and concluded that the trial court's refusal to instruct the jury on aggravated kidnapping was reversible error.

*C. Lesser-included Offenses of Aggravated Robbery*

Tennessee Code Annotated section 39-13-401 defines robbery as the intentional or knowing theft of property from the person of another by violence or putting the person in fear. As relevant to this case, robbery is elevated to aggravated robbery when it is "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-402. A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent. Id. § 39-14-103. Relevant to this case, assault is defined as a person who intentionally or knowingly causes another to reasonably fear imminent bodily. Id. § 39-13-101. Assault is considered aggravated when a person intentionally or knowingly commits an assault that involved the use or display of a deadly weapon. Id. § 39-13-102.

The Petitioner correctly notes that facilitation of aggravated robbery, attempted aggravated robbery, robbery, facilitation of attempted aggravated robbery, attempted robbery, facilitation of robbery, aggravated assault, assault, and theft are lesser-included offenses of aggravated robbery, insofar as they met the Burns test. See Burns, 6 S.W.3d at 466. However, as stated above, the mere existence of a lesser offense to a charged offense is not sufficient alone to warrant a charge on that offense. Id. at 468. The trial court is only permitted to instruct the jury as to these lesser-included offenses if it first determines that the record contains any evidence, liberally construed in favor of inclusion, which reasonable minds could accept as to the lesser-included offense. See id. Then, "the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense." Id. at 469.

After reviewing the record and the relevant case law, we conclude that the trial court's failure to charge the applicable lesser-included offenses was not error. This court has held that "the trial court is not obliged to give the lesser-included offense instruction where there is no evidence of the lesser offense other than the very same evidence which supports the greater offense, that is, 'that reasonable minds could accept as to the lesser-included offense.'" State v. Lewis, 36 S.W.3d 88, 100 (Tenn. Crim. App. 2000) (quoting Burns, 6 S.W.3d at 467). In the instant case, the evidence that the Defendant committed aggravated robbery, involving the five victims listed in the indictment, was overwhelming and uncontroverted. See generally id. (concluding that there was no error in failing to charge a lesser-included offense of attempted theft where the defendant's theory was that the crime never occurred, noting the significance of the defendant's failure to dispute that he employed a gun in the encounter with the victim); cf. Johnson v. State, 531 S.W.2d 558, 559 (Tenn.1975) (finding error in the trial court's failure to charge a lesser-included offense because there was conflicting evidence before the jury regarding whether the defendant possessed a weapon during the perpetration of his crime). Our supreme court has held that "[f]ailure to instruct is not error where the record clearly shows that the defendant was guilty of the greater offense and the record is devoid of any evidence permitting an inference of guilt of the lesser offense." State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999).

Here, all seven of the victims involved in the incident testified that both the Petitioner and his co-defendant had guns, that they demanded money and other property, that the victims complied with their demands, that the Petitioner was an active and willing participant in the crimes, and that the victims feared for their lives. The Petitioner's defense was that he was not present during this incident and had been misidentified; as such, he did not challenge any of the victims' allegations of fact involving the aggravated robbery. Nevertheless, the jury obviously rejected the Petitioner's claim of innocence, leaving them with only the victims' recitations of the facts to consider which strongly supported the aggravated robbery charge. Thus, "the evidence supported the greater offense, and the record

was devoid of evidence supporting the lesser charge[s]" of facilitation of aggravated robbery, attempted aggravated robbery, robbery, facilitation of attempted aggravated robbery, attempted robbery, facilitation of robbery, aggravated assault, assault, and theft.[3] Id. at 129.

### D. *Lesser-included Offenses of Aggravated Burglary*

Facilitation of aggravated burglary, burglary, facilitation of burglary, aggravated criminal trespass, attempted aggravated criminal trespass, and criminal trespass are technically all lesser-included offenses of aggravated burglary. However, we conclude that, of these seven lesser-included offenses, the evidence was only sufficient to support an instruction on facilitation of aggravated burglary.

As relevant to this appeal, "A person commits burglary who, without the effective consent of the property owner[, e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402. First, we note that the trial court could not instruct the jury on burglary because the evidence was uncontroverted that the building at issue was Mr. Smith's home, which automatically classified the offense as an aggravated burglary. See Tenn. Code Ann. §§ 39-14-401, -403. Likewise, that reasoning also precluded an instruction on facilitation of burglary. Further, the trial court also properly declined to instruct the jury on the criminal trespass-related offenses. "A person commits criminal trespass if the person enters or remains on property, or any portion of property, without the consent of the owner." Id. § 39-14-405. Criminal trespass is "aggravated" when "[t]he person intends, knows, or is reckless about whether such person's presence will cause fear for the safety of another." Id. § 39-14-406. Because the evidence very clearly demonstrated that multiple offenses were committed upon immediately the Petitioner's entry of the home and that the Petitioner committed these offenses while armed, the evidence did not support instructions on the criminal trespass-related offenses.

Turning to our earlier conclusion that the trial court erred in failing to instruct the jury on the charge of facilitation of aggravated burglary, we further conclude that this error was harmless. In conducting a harmless error analysis in this context, the question is "whether a reasonable jury would have convicted the defendant of the lesser-included offense instead of the charged offense." Banks, 271 S.W.3d at 125 (quoting State v. Richmond, 90 S.W.3d

---

[3] As previously noted, jury instructions on the lesser-included offenses involving attempt and facilitation are not required when the evidence clearly shows that the crime was completed. See Banks, 271 S.W.3d at 125. ("[I]nstructions are unnecessary where the evidence does not involve proof of solicitation or facilitation."); State v. Wilson, 211 S.W.3d 714, 721 (2007); State v. Robinson, 146 S.W.3d at 487; see also State v. Marcum, 109 S.W.3d 300, 303-04 (Tenn. 2003); State v. Ely, 48 S.W.3d 710, 719 (Tenn. 2001).

648, 662 (Tenn. 2002)). As previously noted, if no reasonable jury would have convicted the defendant of the uncharged lesser-included offense rather than the offense for which the defendant was convicted, then the failure to charge is harmless beyond a reasonable doubt. Locke, 90 S.W.3d at 675. The record reflects that a witness testified that the Petitioner arrived at Mr. Smith's home approximately five minutes after his co-defendant forced entry into the home at gunpoint; this evidence supports the facilitation of aggravated burglary charge. However, the witnesses also testified that the Petitioner entered the home armed with a gun; that he was an active participant in the robberies, kidnappings, and rapes; and that he never appeared reluctant to participate. This was very strong evidence to show that the Petitioner was at least criminally responsible for the aggravated burglary, insofar as he aided his co-defendant and appeared to be acting with the intent to promote or assist the commission of the offense and to benefit in the proceeds, if not a principal who was simply waiting outside. Therefore, it was highly unlikely that a reasonable jury would have convicted the Petitioner of the uncharged lesser-included offense rather than the offense for which he was convicted.

CONCLUSION

Based upon the foregoing, the judgment of the post-conviction court is reversed in part. Because the jury was not charged with any lesser-included offenses of especially aggravated kidnapping, we cannot conclude that the trial court's failure to charge the jury with the lesser-included offense of aggravated kidnapping, as discussed in detail above, was harmless error. Trial counsel's deficiency in failing to file the written request for lesser-included offenses was the basis for this court declining to review the trial court's refusal to charge lesser-included offense on direct appeal. This deficiency prejudiced the Petitioner because he would have been successful in challenging the trial court's refusal on appeal. It is for these reasons we conclude that a new trial on the especially aggravated kidnapping convictions is warranted.

_____
D. KELLY THOMAS, JR., JUDGE